```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 3:99cr264(AHN) |
| | : | |
| LUKE JONES | : | |

## RULING ON MOTION FOR NEW TRIAL

Now pending before the court is Luke Jones's ("Jones") pro se motion for a new trial [doc. # 2110].  For the reasons discussed below, the motion is denied.

## FACTS AND PROCEDURAL BACKGROUND[1]

Jones was the leader of a violent drug trafficking enterprise that operated in and around the P.T. Barnum Housing Project in Bridgeport, Connecticut.  On October 30, 2003, a jury convicted him of one count of conducting an enterprise through a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d); two counts of conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846; and two counts of conspiracy to commit violent crimes in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5).

The court sentenced Jones to concurrent life sentences on

---

[1] The court assumes the parties' familiarity with the underlying facts and procedural history and will only relate those facts necessary to address the issues raised by this motion.

the racketeering, racketeering conspiracy, and two drug conspiracy charges, and two concurrent 10-year sentences on the two VICAR conspiracy charges. On appeal, the Second Circuit upheld Jones's conviction on all counts.[2]

Jones now moves for a new trial under Fed. R. Crim. P. 33 based on newly discovered evidence.

STANDARD

Under Rule 33(a), the court "may vacate any judgment and grant a new trial if the interest of justice so requires." Although the court has broad discretion in considering a motion for a new trial, it should exercise its authority under Rule 33 "sparingly and in the most extraordinary circumstances." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). In considering this motion, the court must "defer to the jury's resolution of conflicting evidence and assessment of witness credibility," and therefore, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. at 133-34 (quoting Sanchez, 969 F.2d at 1414). "The ultimate

---

[2] The Second Circuit, however, withheld its ruling on his sentence to allow this court to consider under United States v. Booker, 543 U.S. 220, 224, 259 (2005), and United States v. Crosby, 397 F.3d 103, 117 (2d Cir. 2005), whether it would have imposed a nontrivially different sentence under an advisory Sentencing Guidelines regime. On remand, the court declined to resentence Jones. That ruling is currently on appeal.

test . . . is whether letting a guilty verdict stand would be a manifest injustice." Id. at 133. There must be a real concern that an innocent person may have been convicted. See id. The defendant bears the burden of persuading the court that a new trial is necessary and appropriate. United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995).

A Rule 33 motion must be filed within seven days of the verdict, or if based on newly discovered evidence, within three years of the verdict. Fed. R. Crim. P. 33(b); see United States v. McCarthy, 271 F.3d 387, 399 (2d Cir. 2001).

## DISCUSSION

Jones claims that newly discovered evidence relating to the trial testimony of Frank Estrada ("Estrada"), a cooperating witness and leader of another drug-trafficking organization operating in P.T. Barnum, warrants a new trial because: (1) a post-trial affidavit from Estrada's co-defendant in a separate case impeaches the testimony Estrada gave at Jones's trial regarding Estrada's involvement in an unrelated murder; (2) the government failed to disclose Estrada's prior testimony from another trial, which Jones could have used to impeach Estrada; and (3) the same prior testimony demonstrates that Estrada perjured himself at Jones's trial.

I.   Post-Trial Affidavit Impeaching Estrada

Jones first argues that the affidavit of Eddie Mercado ("Mercado") constitutes newly discovered evidence warranting a new trial because it impeaches Estrada's trial testimony about his involvement in the murder of Ada Escalara ("Escalara"). Mercado testifies that Estrada asked him to kill Escalara because she witnessed Estrada murder Ralph Green, who was bothering Estrada's sister. At Jones's trial, however, Estrada testified that he asked Mercado to kill Escalara because she was a witness in a case involving Estrada's attorney. Mercado, despite being convicted of the VICAR murder of Escalara on December 1, 2005 and sentenced to a mandatory lifetime term of imprisonment, see United States v. Mercado, 3:04-CR-166(SRU), further testified that he declined to kill Escalara and that Estrada, himself, eventually carried out the killing.

The government contends that Mercado's testimony is not "newly discovered" because, regardless of Estrada's motive for ordering Escalara killed, Estrada testified extensively at Jones's trial that he ordered the murder. The government, therefore, contends that Jones's motion is untimely because it was not filed within seven days after the verdict as required by Fed. R. Crim. P. 33. The court agrees.

Where a defendant requests a new trial based on newly discovered evidence, he must file the motion within three years

of the verdict. Fed. R. Crim. P. 33(a). Otherwise, if the defendant moves on any other grounds, "he must do so within seven days after the verdict or within such further time the district court sets." United States v. McCarthy, 271 F.3d 387, 399 (2d Cir. 2001); United States v. Bramlett, 116 F.3d 1403, 1405 (11th Cir. 1997) (stating that "[t]he time limits imposed by Rule 33 are jurisdictional" and "District Courts therefore lack jurisdiction to grant a new trial unless the motion is [timely] filed").

Here, the jury returned its verdict on October 30, 2003. Jones did not move to extend the seven-day filing period and instead filed this motion for a new trial three years later, on October 31, 2006. Therefore, Jones's motion would be timely only if the Mercado affidavit is "newly discovered" evidence.

As the government points out, however, information linking Estrada to the Escalara murder cannot be "newly discovered" because Estrada testified at Jones's trial regarding his involvement in that murder:

> Q. Sir, did there come a time when you became involved in a scheme to murder a witness,[3] someone who was a witness in connection with a criminal proceeding.
> A. Yes.
> Q. All right. Was this person a witness against you?
> A. No.

---

[3] Both parties assume, without comment, that this "witness" is Escalara.

> Q. Was this person a witness in something that was unrelated to your criminal activity?
> A. Yes.
> Q. Did you direct Billy Gomez and Eddie Mercado to kill this witness?
> A. Yes.
> Q. As a result of your directing Billy Gomez and Eddie Mercado to kill this witness, did they kill that witness?
> A. Yes.
> Q. Sir, have you had occasion to talk about that scheme with members of the FBI?
> A. Yes.
> Q. And are you presently cooperating in the investigation of that scheme to kill that witness?
> A. Yes.

(Trial Tr. vol. VI, 2055-56, Oct. 21, 2003.) In addition, on cross examination, Estrada explained that he ordered Escalara murdered at the behest of his attorney:

> Q. With respect to that murder, at your direction, Billy the Kid went and killed a witness; right?
> A. Yeah.
> Q. That witness had nothing to do with any you were involved in?
> A. No.
> Q. Had nothing to do with any drug case?
> A. No.
> Q. Had nothing to do with you making any money, or anything like that?
> A. No.
> Q. Just doing a friend a favor?
> A. Yeah.
>
> . . . .
>
> Q. How did it come about you got involved in that murder?
> A. She was supposed to testify in a case my attorney was handling.
> Q. How does that affect you?
> A. My sister was having problems at that time, and when I went to the office, Jim Ruane

was working on the case.
Q. Your sister's case?
A. No, was working on the –
Q. The case that involved the witness?
A. That involved the witness.
Q. Okay. So what does your sister's legal problems have to do with anything?
A. I went to his office to see him about that, and he was working on that case.
Q. Okay.
A. And we got into a conversation about this witness that he had that was going to testify in his upcoming trial.
Q. Okay. How does that affect you?
A. It didn't affect me, it affected him.
Q. So you went and had this person killed –
A. Basically, yes.
Q. – as a favor?
A. Yes.
Q. He certainly didn't ask you to do it?
A. Yes, he did.
Q. Now you're telling us that your lawyer at the time asked you to kill somebody so he could prevail in a totally unrelated case?
A. Yes.
Q. At any point, did you say to him, "Are you out of your mind?"
A. No, I didn't.
Q. What kind of case was that – wasn't even a drug case?
A. What kind of case was what?
Q. Your lawyer and the witness involved.
A. It was a murder case.
Q. So your lawyer was representing somebody in a murder case?
A. Yes.
Q. This person was a witness in that case?
A. Yes.
Q. Male or female witness?
A. Female.
Q. Old or young?
A. Young.
Q. You didn't know the Defendant in that murder case at all?
A. No.
Q. Had nothing to do with the case?
A. No.

>        Q. You're telling us your lawyer wanted to win —
>        A. He wanted to win.
>        Q. – so you went out and had the witness killed?
>        A. Yes, I did.
>
>        . . . .
>
>        Q. This lady gets killed and that's it?
>        A. That's it.
>        Q. No money involved?
>        A. No money involved.

(Trial Tr. vol. VII, 2366-72, Oct. 22, 2003.) Thus, to the extent that Jones's motion simply claims that evidence of Estrada's involvement in the Escalara murder is "newly discovered," this extensive testimonial record belies that argument and the motion for new trial based on the Mercado affidavit is untimely.

Further, even if the court considered Jones's motion timely under Rule 33, this evidence does not provide a basis for granting a new trial because the jurors heard other testimony from Estrada himself that would cause them to consider his testimony with great caution. They heard, for example, testimony regarding: Estrada's guilty plea to thirteen charges, including racketeering, racketeering conspiracy, accessory after the fact to murder in aid of racketeering, obstruction of justice, and assault in aid of racketeering, (Trial Tr. 2014-20); his prior criminal history, including his efforts to sell narcotics while in prison by corrupting prison officials, (Trial Tr. 2001-12,

2022-24); and his reputation for violence, including his testimony that he earned his nickname, "The Terminator," by "[h]urting people" and that he cultivated this reputation because it was "good for business," (Trial Tr. 2024-27). Jones's counsel even rhetorically asked the jurors in closing argument about whether they had "ever in [their] lives sat this close to the embodiment of pure evil," referring to Estrada. (Trial Tr. 2909.)

In addition, Jones has not demonstrated how Mercado's testimony on the tangential issue of Estrada's motive for the Escalara murder could further discredit Estrada, who testified – honestly or not – that he ordered a murder in the same way he would hand out a gratuity. (Trial Tr. 2367) (stating that when counsel asked Estrada whether, in ordering Escalara murdered, he was "[j]ust doing a friend a favor," he responded, "Yeah").) Such "newly discovered" evidence is not a justifiable basis for a new trial. See, e.g., Sasso, 59 F.3d at 351 (finding that evidence tending to impeach the numerical accuracy of a witnesses' statements did not warrant a new trial because the evidence was cumulative).

Considering this mountain of impeachment testimony, the jury had more than enough evidence to gauge the unreliability of Estrada's testimony, and thus, the Mercado affidavit would simply provide further impeachment of a witness whose testimony had

-9-

already been discredited. See, e.g., United States v. Tutino, 883 F.2d 1125, 1140 (2d Cir. 1989) (stating that "[e]vidence that would be offered solely to further impeach a witness whose character has already been shown to be questionable" does not warrant a new trial under Rule 33). For these reasons, the court declines to order a new trial based on the Mercado affidavit.

    II. <u>Failure to Disclose Estrada's Prior Testimony</u>

As an alternative ground for a new trial, Jones argues that the government failed to turn over Estrada's prior testimony from the trial of Estrada's co-defendants in another case. In support of his claim that the prior testimony was withheld, Jones relies on <u>United States v. Estrada</u>, 430 F.3d 606, 622 (2d Cir. 2005), where the Second Circuit stated that "Estrada also testified that he had agreed to cooperate in this case in part so that his sister would not be charged with murder." At Jones's trial, the government entered Estrada's cooperation agreement into evidence and questioned Estrada as to his understanding of that agreement. In response, Estrada testified it meant that he would not "get anything in particular in exchange for [his] cooperation." (Trial Tr. 2153.) Jones now argues that Estrada's conflicting prior testimony, as described by the Second Circuit, would have been relevant and important evidence that he could have used to impeach Estrada's testimony about his cooperation agreement. The government responds that it turned over Estrada's prior testimony

and that, in any event, that prior testimony could have only served as cumulative impeachment, which does not warrant a new trial. The court agrees.

"A new trial is warranted under Brady v. Maryland, 373 U.S. 83 (1963), . . . where (1) 'the government failed to disclose favorable evidence, and (2) . . . the evidence it 'suppressed' was material." United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996) (quoting United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995)).

The testimony that was described in the Second Circuit's opinion was given by Estrada at a trial in March and April of 2002, one year before Jones's trial took place. Therefore, the government does not contest that it had an obligation to turn over this prior testimony to Jones before his trial under Brady and the Jencks Act, 18 U.S.C. § 3500. See Wong, 78 F.3d at 79; Payne, 63 F.3d at 1210 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). While the government represents that Jones "was provided with Estrada's criminal history record, grand jury testimony, prior trial testimony, and a[] FBI 302 report of interview," (Opp'n to Mot. for New Trial at 5), Jones contends that he did not receive this specific prior testimony.[4] Based on

---

[4] This factual dispute prevents the court from denying Jones's motion, as the government suggests, as untimely. If the court assumes that the government did not turn over this prior testimony, then Jones's motion would be timely based on newly discovered evidence under Rule 33.

the present record, the court cannot resolve this factual dispute.

Nevertheless, the court need not hold a hearing to resolve this factual dispute because, even if the government did not turn over this prior testimony, it is not material, as required for a new trial under Brady. Cf. United States v. Wallach, 935 F.2d 445, 457 (2d Cir. 1991). "Evidence of impeachment is material if the witness whose testimony is attacked supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." Wong, 78 F.3d at 79 (citations and quotations omitted). "However, new impeachment evidence is not material, and thus a new trial is not required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Id. (quotations omitted). "In sum, a new trial is warranted only if the evidence is material, noncumulative, and would probably lead to an acquittal." Id. (quotations omitted).

Estrada's prior testimony is not material under Brady because the jury heard ample evidence demonstrating Estrada's bias. For example, Jones's counsel thoroughly cross-examined Estrada about his cooperation agreement and the fact that, although he had pleaded guilty to thirteen federal charges in

2002 without any explicit promise from the government, (Trial Tr. 2016-22), he had not yet been sentenced and therefore stood to benefit from a 5K motion for his "performance" on the stand:

> Q. Mr. Estrada, you don't mean to suggest that your deal with the Government requires that you serve a life sentence, do you?
>
> . . . .
>
> A. I'm not suggesting anything.
>
> . . . .
>
> Q. There is no guaranteed sentence that you're going to get out of this deal, is there?
> A. There's no guarantees.
> Q. You could get a 10-year sentence; right?
> A. That's possible?
> Q. You can get a life sentence?
> A. That's possible, also.
> Q. You're not going to be sentenced until you're through cooperating with the Federal Government?
> A. I believe so. I don't know when they're going to sentence me.
> Q. Well, you haven't been sentenced yet.
> A. No.
> Q. Your performance – the extent to which you cooperate is a factor that's going to help determine your sentence; right?
> A. I don't understand what you mean by "performance."
> Q. Maybe that was the wrong word.
> A. Yeah.
> Q. Your willingness to testify on behalf of the Government against other people is a factor?
> A. That's part of my Cooperation Agreement to do that.
>
> . . . .
>
> Q. Does your agreement provide that if the Government determines that you have provided substantial assistance in the prosecution of

>           another person, the Government will file a
>           motion on your behalf?
>           A. Yes, that's in the Cooperation Agreement.
>           Q. That's the deal?
>           A. Yes.
>           Q. That determination is made solely by the
>           prosecution; right?
>           A. Yes, I believe so.
>           Q. Your lawyer has nothing to do with that;
>           right?
>           A. No.
>           Q. Should they not file that motion for you,
>           there's nothing you can do about that?
>           A. No.
>           Q. So your relationship with the Government is
>           one of some mutual dependency?
>           A. Yes.
>           Q. It's a performance-oriented agreement;
>           right?
>           A. I just get over here and tell the truth.
>           Q. All right.
>           A. If you want to say that's performance-based –
>           Q. There's no question that your hope is to
>           receive a sentence considerably less than life
>           in jail?
>           A. Absolutely.

(Trial Tr. 2223-27.)

Jones's counsel further elicited testimony that Estrada still faced possible indictment for the Escalara murder, thereby implying that Estrada testified to please the government and avoid indictment, even though he stated – perhaps falsely – that he had not been explicitly promised anything in return for his testimony against Jones:

>           Q. Of all of the charges that you have entered
>           guilty pleas to, any of them relate to this
>           [Escalara] murder?
>           A. No.
>           Q. Anybody tell you that that's not considered
>           to be a federal offense?

-14-

>     A. No.
>     Q. You have not been charged with the so-called VICAR offense in connection with that murder?
>     A. No.
>     Q. You don't expect to be, do you?
>     A. No, I'm expected to plead guilty to that offense.
>     Q. Not in the Federal Court though; right?
>     A. I believe it's in the Federal Court, it's my understanding.
>
>     . . . .
>
>     Q. This murder was never included in that?
>     A. Not in that indictment, no.
>     Q. Is there any other indictment I'm not aware of about that?
>     A. None that I am aware of. I know the Government is working on a case.
>     Q. But that's something that sort of hangs over you?
>     A. Yeah.
>     Q. In all probability, you understand that will be resolved in the State Court system?
>     A. I'm not aware of that.
>     Q. All of that turns on the resolution of your cooperation in connection with this case and others. When that's all done, then we'll deal with that murder case?
>     A. That case is in investigation right now.
>     Q. There isn't a whole lot to investigate. You're telling us you did it, you were involved in it; right?
>     A. Yes, right.
>     Q. Is there anything else to investigate that you know of?
>     A. No, not really.
>     Q. It's done?
>     A. Yes, it's done.

(Trial Tr. 2372-75.)

In addition to testifying about his bias and possible motive to lie, Estrada testified extensively about matters undermining his veracity. Aside from testifying about his extensive history

-15-

of criminality, he also testified on cross examination that he met with FBI agents between thirty and thirty-five times to prepare his testimony, and Jones's counsel elicited testimony suggesting that Estrada would tailor his testimony to confidential DEA reports of interview, which he had access to prior to testifying against Jones.  (Trial Tr. 2254-57.)

Moreover, in closing argument, Jones's counsel took aim at Estrada's bias and veracity by suggesting that "[h]e didn't cut this deal to spend the rest of his life in jail;" that he must have forfeited over $10 million in assets to the government in exchange for some expectation of leniency; and that he was essentially duping the government with well-crafted lies in order to save himself from life in prison while ensuring that Jones, his former rival, would get convicted of a crime carrying a punishment of life imprisonment.  (Trial Tr. 2909-11.)

Thus, further impeachment with the prior testimony described in the Second Circuit opinion would be "merely minor, cumulative additions to the massive mound of discredit heaped upon [the witness] over several days of both direct and cross-examination." Wallach, 935 F.2d at 456.

An additional reason denying Jones's motion for a new trial is that Estrada's testimony was not the only evidence that supported Jones's conviction.  See Wong, 78 F.3d at 79. Although, Jones claims that Estrada was the only government

witness to link him to the D-Top conspiracy,[5] the record shows that the government produced independent and overwhelming evidence that Jones was involved in drug distribution operations at D-Top, even though his brother, Leonard, headed the day-to-day operations. (See, e.g., Trial Tr. 290, 686-88, 1364, 1477-81, 1627, 1746, 1896, 1917-19.) For example, one of Jones's lieutenants testified that he opened fire on rival gang members who were selling drugs at D-Top in order to protect the enterprise's turf, indicating that, although his brother's organization managed the day-to-day operations at D-Top, Jones's organization helped control the area. (Trial Tr. 293-93.) In addition, three other witnesses testified that Jones helped murder rival gang member, Anthony Scott, because Scott allegedly shot Jones's brother, Leonard, following a dispute over narcotics sales in D-Top. (Trial Tr. 1507-09, 1709-10, 1714-19, 2407-13, 1750-59.)[6]

---

[5] At Jones's trial, Estrada testified, among other things, that he and Jones's brother, Leonard, divided D-Top between their two organizations and that Estrada supplied Jones with high quality cocaine, which Jones gave to Leonard to sell in D-Top.

[6] Jones also argues that Estrada's testimony provided the only evidence supporting an element required for conviction under RICO that the activities of the enterprise affect interstate or foreign commerce. See 18 U.S.C. § 1962(c). Aside from Estrada's testimony, however, the jury heard testimony from Manuel Hinojosa, a cooperating witness, that another member of the enterprise drove to New York to buy drugs for sale at P.T. Barnum in Bridgeport, Connecticut. (Trial Tr. 2848-49.) Therefore, there is no merit to this argument.

Thus, because the jury heard extensive evidence demonstrating Estrada's bias and undermining his veracity and because independent evidence supported Jones's conviction, the government's alleged failure to disclose the prior testimony cited in the Second Circuit decision is not material under <u>Brady</u>, and therefore, does not warrant a new trial.

III. <u>Use of Estrada's Perjured Testimony</u>

Relying on the same prior testimony mentioned by the Second Circuit in <u>Estrada</u>, 430 F.3d 622, Jones argues that he is entitled to a new trial because Estrada perjured himself when he testified that he would not "get anything in particular in exchange for [his] cooperation." (Trial Tr. 2153.) Even assuming that Jones could demonstrate that Estrada perjured himself based on the statement in the Second Circuit's decision, the court finds that this perjured testimony would not warrant a new trial.[7]

In order for Jones to prevail on his motion for new trial based on perjured testimony, he must establish that: (1) the

---

[7] The record is insufficient for the court to determine whether Estrada's conflicting prior testimony indicates that Estrada perjured himself at Jones's trial. The court notes, however, that Jones misquotes the language of the Second Circuit decision by omitting the phrase "in this case," which indicates that the agreement concerning his sister related to Estrada's testimony against his co-defendants, not Jones. (Def.'s Memo. in Support of Mot. for New Trial at 9 (quoting the opinion as "he had agreed to cooperate in part, so that his sister Francis Estrada (Francis) would not be charged with murder."))

-18-

government's case included perjured testimony; (2) the government knew, or should have known, of the perjury; and (3) there is a reasonable likelihood that the result of the trial would have been different. United States v. Torres, 128 F.3d 38, 48-49 (2d Cir. 1997).

Assuming for the purpose of deciding this motion that Estrada's testimony was perjured and that the government knew, or should have known, of the perjury, there is no reasonable likelihood that the judgment of the jurors would have been different if they knew that Estrada's testimony was perjured because, as discussed above, Estrada's alleged perjury did not relate to Jones's guilt or innocence, only Estrada's credibility; Estrada was significantly impeached; and his testimony was corroborated by other witnesses. See Wong, 78 F.3d at 82 (declining to order a new trial based on perjured testimony where the witness was already impeached at trial and independent evidence supported the conviction); Wallach, 935 F.2d at 457 (declining to order a new trial based on perjured testimony where the witness was already impeached at trial and the perjury "did not bear on the defendants' guilt or innocence only on [witness's] credibility").

For there reasons, the court declines to order a new trial because of Estrada's alleged perjury.

CONCLUSION

For the foregoing reasons, Jones's motion for new trial [dkt. # 2110] is **DENIED**.

SO ORDERED this 1st day of October 2007, at Bridgeport, Connecticut.

/s/
Alan H. Nevas
United States District Judge