**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> LUKE JONES, <br> *Defendant*. | No. 3:99-cr-264-1 (VAB) |

**RULING ON**
**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Luke Jones ("Defendant") moves for his compassionate release under 18 U.S.C. § 3582(c)(1)(A). Emergency Mot. for Compassionate Release, ECF No. 2658 (Mar. 31, 2020) ("Mot. for CR").

The United States of America (the "Government") has opposed this motion. Government's Opp'n to Mot. for CR, ECF No. 2666 (Apr. 3, 2020) (Gov't Opp'n–CR").

For the reasons explained below, the motion for compassionate release is **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background, and will only reiterate what is necessary to address this compassionate release motion. *See* Ruling and Order on First Step Act Mot. for Immediate Release or Resent. at 1–7, ECF No. 2682 (May 29, 2020) ("First Step Act Ruling") (detailing this case's underlying factual and procedural background).

On March 31, 2020, Mr. Jones filed an emergency motion for compassionate release. Mot. for CR.

On April 3, 2020, the Government opposed his motion. Gov't Opp'n–CR.

1

On April 24, 2020, Mr. Jones filed a reply in further support of his motion for compassionate release. Reply Mem. in Supp. of Mot. for CR, ECF No. 2674 (Apr. 24, 2020) ("Def.'s Reply–CR").

On May 5, 2020, the Court held a hearing by videoconference on the motion for compassionate release. Minute Entry, ECF No. 2676 (May 5, 2020); Mot. Hrg. Tr., ECF No. 2677 (May 5, 2020).

On May 26, 2020, Mr. Jones filed a supplement to his motion for compassionate release. Notice of Suppl. Information, ECF No. 2680 (May 26, 2020).

## II. STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by

petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III.  DISCUSSION

The U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United*

3

*States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

The Commentary to U.S.S.G. § 1B1.13 identifies "four categories of criteria for compassionate release: 'Medical Conditions of the Defendant,' 'Age of the Defendant,' 'Family Circumstances,' and 'Other Reasons.'" *Rivernider*, 2020 WL 597393, at *2 (quoting U.S.S.G. § 1B1.13, Commentary (1)(A)–(D)). With regard to the "other reasons" category, "'extraordinary and compelling reasons exist' when, [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the defendant's medical conditions, age, or family circumstances. *Id.* at *3 (quoting U.S.S.G. § 1B1.13, Commentary (1)(D)).

In any event, "[t]he defendant has the burden to show he is entitled to a sentence reduction," *Ebbers*, 2020 WL 91399, at *4 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see United States v. Tagliaferri*, No. 13 CR. 115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

In his motion for compassionate release under the First Step Act, Mr. Jones contends that "'[e]xtraordinary and compelling reasons' have arisen since the time of sentencing (and indeed following the filing of the motion for relief under the First Step Act) warranting a reduction of [his] sentence to time served." Mot. for CR at 2. Mr. Jones emphasizes the COVID-19 (or "coronavirus") pandemic and "the ideal environment [of jails and prisons] for transmission of

4

contagious diseases." *Id.* at 2–7. Mr. Jones is now fifty-two years old "and therefore at higher [risk] of serious illness or death if he contracts COVID-19." *Id.* at 7. "Mr. Jones is also vulnerable because his health is extremely fragile and he suffers from a host of medical ailments": "bilateral kidney cancer, currently in remission following the removal of portions of both kidneys in two invasive surgeries. . . . [,] chronic kidney disease, hypertension, anemia, hemorrhoids, and benign positional vertigo. . . . [as well as] recent symptoms consistent with colon cancer and prostate cancer." *Id.* (citations omitted).

In addition to his documented medical conditions,[1] Mr. Jones urges the Court to consider his arguments for relief under the First Step Act[2]:

> (1) all of his codefendants eligible for relief have now been sentenced to time served; (2) Mr. Jones experienced conditions over and above what the average federal inmate experiences; (3) Mr. Jones has become a model inmate; and (4) Mr. Jones's severe health issues, advanced age, plans for the future and close family ties make him unlikely to recidivate.

*Id.* at 10. According to Mr. Jones, the fact that he "has already served such a lengthy sentence . . . the equivalent of a sentence of more than 23 years," is a further compelling reason warranting his immediate release since "the persistent risk to Mr. Jones's health outweighs any potential benefit, if any, to keeping [him] in federal custody for any more time." *Id.* Mr. Jones urges the Court to "construe any exhaustion requirement as futile given the urgency of this national emergency and rapid spread of the pandemic." *Id.*

---

[1] Before Mr. Jones was transferred in March 2020 from Butner to FCI Petersburg, he developed "a dry, nonproductive cough that [was] not alleviated by cough drops or cough syrups." Mot. for CR at 7. When he arrived at FCI Petersburg, he was quarantined.

[2] Following oral argument on this motion, Mr. Jones submitted additional medical records regarding his current physical condition. Notice of Suppl. Information.

The Government objects, arguing that Mr. Jones failed to exhaust administrative remedies because he did not first present his request for compassionate release to the Bureau of Prisons, nor has the thirty-day period after the Bureau of Prisons decision passed. Gov't Opp'n–CR at 1. As a result, the Government asserts that "the Court lacks the authority to grant [Mr. Jones's] motion." *Id.* The Government contends that the Court cannot ignore the mandatory exhaustion requirement; and "[e]ven if this Court could ignore [it]," to do so "would be imprudent," because it would prevent the Bureau of Prisons from engaging in its review. *Id.* at 7.

Furthermore, the Government argues that Mr. Jones does not meet either of the "two limited circumstances" for compassionate release. *Id.* at 7. First, the Government submits there are not "extraordinary and compelling reasons" to modify Mr. Jones's sentence under § 3582(c)(1)(A)(i), because Mr. Jones has not explained "why the health conditions that supposedly put him at increased risk cannot be given appropriate treatment" at FCI Petersburg. *Id.* at 8. Second, the Government contends that Mr. Jones "cannot satisfy the criteria" for release under § 3582(c)(1)(A)(ii) because he "has not reached the age of 70, has not served at least 30 years in prison, and [the] [Bureau of Prisons] Director has not made any determination as to the defendant's dangerousness." *Id.* The Government thus asserts that "the statute precludes the Court from modifying the sentence to home confinement." *Id.*

In reply, Mr. Jones first argues that "the Court has the authority to grant a sentence reduction without waiting for the 30-day window to lapse" since Mr. Jones submitted his request to the warden of FCI Petersburg on April 21, 2020. Def.'s Reply–CR at 1–2. (internal formatting omitted). Mr. Jones asserts that the Bureau of Prisons is "not a jurisdiction gatekeeper" but "a claims processor." *Id.* at 2. As a result, Mr. Jones contends that the Court "can" and "should excuse the 30-day wait." *Id.* at 3, 11 (internal formatting omitted). According to Mr. Jones,

requiring exhaustion would be futile and unnecessary, and would unduly prejudice him. *Id.* at 11–13. "That the [Bureau of Prisons] has not reported any cases at FCI Petersburg is even more reason to act quickly, as the Court fortunately still has the opportunity to act in a manner that can still save Mr. Jones and protect the public health." *Id.* at 13.

In conclusion, Mr. Jones argues that he meets the requirements for compassionate release under "extraordinary and compelling circumstances," which allow for the granting of "relief on a variety of grounds." *Id.* at 13–14 ((internal formatting omitted).

The Court disagrees.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions, in combination with the increased risks of COVID-19 in prisons, constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Norris*, No. 17-cr-106-1 (SRU) (Apr. 16, 2020) (order granting reduction of sentence under the First Step Act because of defendant's chronic respiratory disease); *United States v. Smith*, No. 12 CR 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))); *United States v. Zukerman*, 2020 WL 1659880, at *4–*5 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirements because of defendant's advanced age and compromised health and finding his age and compromised health warranted compassionate release).

Mr. Jones is fifty-two years old and suffers from underlying medical conditions that leave him immunocompromised. According to his most recent medical records, Mr. Jones suffers from

hypertension, stage III chronic kidney disease, and an unspecified abnormal finding of blood chemistry. Ex. D: Bureau of Prisons, Health Services, Health Problems at 1, ECF No. 2661 (Mar. 30, 2020) ("BOP Health Records"). In addition, Mr. Jones suffers from "bilateral kidney cancer," which is in remission "following the removal of portions of both kidneys in two invasive surgeries," Def.'s Reply–CR at 17 (citations omitted), and he has a history of acute upper respiratory infections, BOP Health Records at 3, 5 (indicating diagnoses in 2010, 2011, and 2016 with ongoing treatment).

After reviewing Mr. Jones's health records, the Court finds that his underlying medical conditions put him at higher risk should he be exposed to COVID-19. *See, e.g.*, *United States v. Saad*, 2020 WL 2065476, at *6 (E.D. Mich. Apr. 29, 2020) ("In this case, Defendant's age, together with his chronic kidney disease, hypertension, pulmonary hypertension, and sleep apnea (as well as possible bladder cancer and Defendant's other health issues), meet that requirement. As the World Health Organization has determined, the populations most at risk of suffering severe health risks from COVID-19 are 'older people, and those with underlying medical problems like cardiovascular disease [and] cancer.'" (internal citations omitted)); *see also* Am. Ruling and Order on Second Mot. for Compassionate Release at 9, *United States v. Gileno*, No. 3:19-cr-161-1 (VAB), (D. Conn. Apr. 20, 2020), ECF No. 35 ("Mr. Gileno has demonstrated that he suffers from asthma and respiratory conditions that place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated."); Ruling and Order on Mot. for Compassionate Release at 11, *United States v. Delgado*, No. 3:18-cr-00017 (VAB), (D. Conn. Apr. 30, 2020), ECF No. 76 ("Mr. Delgado has demonstrated that his obesity and sleep apnea place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated. The Court takes note of and appreciates BOP's efforts to

manage the coronavirus pandemic in its facilities. Nonetheless, COVID-19 cases continue to spread in BOP facilities, including in Danbury, and Mr. Delgado's obesity and underlying health conditions make him extremely vulnerable to serious health complications should COVID-19 reach him." (internal citations omitted)); Ruling and Order on Mot. for Compassionate Release at 6–7, *United States v. Peters*, No. 3:18-cr-188 (VAB), (D. Conn. May 1, 2020), ECF No. 155 ("Mr. Peters is thirty-nine years old and suffers from underlying medical conditions which leave him immunocompromised. He has submitted health records under seal confirming past treatment and diagnoses. After reviewing Mr. Peters's health records, the Court finds that his underlying medical conditions put him in a high-risk category." (internal citations omitted)).

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility. In this case, thirty days have passed since April 21, 2020, when Mr. Jones submitted his request to the warden of FCI Petersburg. Def.'s Reply–CR at 2.

In any event, numerous courts within the Second Circuit, however, have waived the exhaustion requirement during the COVID-19 pandemic. *See, e.g.*, *Zuckerman*, 2020 WL 1659880 at *2–*4; *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2–*3 (S.D.N.Y. Apr. 1, 2020).

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of completing the administrative process may be waived 'if one of the recognized exceptions to

9

exhaustion applies.'" *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *3 (D. Conn. Apr. 8, 2020) (quoting *Perez*, 2020 WL 1546422, at *2). These exceptions include: (1) where exhaustion would be futile, including where undue delay due to exhaustion may result in "catastrophic health consequences," (2) where "the administrative process would be incapable of granting adequate relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118–20.

District courts have found that all three exceptions apply in cases where incarcerated individuals, due to their age and underlying health issues, seek compassionate release in light of the spread of COVID-19. *See, e.g.*, *McCarthy*, 2020 WL 1698732, at *4 ("Even a few weeks' delay carries the risk of catastrophic health consequences for [Mr.] McCarthy. . . . [and he] could be unduly prejudiced by such delay. Clearly, given his conditions, [Mr.] McCarthy is at great risk of succumbing to COVID-19."); *Perez*, 2020 WL 1546422, at *3 (waiving exhaustion requirement because delay could result in undue prejudice and render exhaustion futile and inadequate).

As a result to the extent that exhaustion is still required, the Court finds that undue delay in Mr. Jones's release due to exhaustion requirements could result in catastrophic health consequences for him in light of his underlying health conditions and the COVID-19 pandemic, and thus will waive the exhaustion requirement.

But despite Mr. Jones's documented underlying health conditions and in the absence of more specific information that his current health conditions are not being properly managed by BOP, the balance of all of the relevant factors, including the Court's consideration of the § 3553(a) factors, as detailed previously, do not support Mr. Jones's compassionate and immediate release for "extraordinary and compelling reasons." *See* First Step Act Ruling at 23–30 (applying

the § 3553(a) factors to Mr. Jones and concluding his sentence should be reduced from life to 450 months); *see also* Mot. Hrg. Tr. at 52:19–25 (families of his victims continuing to express concerns of trust and fear after over twenty years).

Accordingly, having considered Mr. Jones's motion for compassionate relief, the Court will deny it.

## IV.     CONCLUSION

For the reasons explained above, the motion for compassionate release is **DENIED.**

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of May, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE